**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**DAVID L. WASHINGTON,**

        **Petitioner,**

**v.**                                                               **Civil Action No. 2:09cv74**
                                                                             **(Judge Stamp)**

**EDWARD REILLY, JR.**
**AND JAMES N. CROSS,**

        **Respondents.**

## REPORT AND RECOMMENDATION

### I. Procedural History

On June 22, 2009, the *pro se* petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. In the petition, the petitioner challenges the constitutionality of the National Capital Revitalization and Self-Government Act of 1997, Pub. L. No. 105-33, § 11231(a)(1), 111 Stat. 712, 745, D.C. Code § 24-131(a) ("Revitalization Act"), which grants the United States Parole Commission ("the Commission") jurisdiction over District of Columbia ("D.C.") Code offenders. This case is before the undersigned for a Report and Recommendation on the respondents' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment.

### II. Contentions of the Parties

**A. The Petition**

In the petition, the petitioner asserts the following grounds for habeas relief:

(1) The Revitalization Act is unconstitutional in that it violates the United States Constitution, Article I, Bill of Attainder, Ex Post Facto Punishment prohibition and the Separation of Powers doctrine.

(2) Congress exceeded its authority by delegating Article III authority to the Commission in the National Capital Revitalization Act and the D.C. (SRAA) of 2000.

(3) The enactment of the D.C. (SRAA) of 2000 and D.C. Code § 24-403.1(6)(a) and (b) is a violation of the United States Constitution, Article I, Article III, the 5th, 8th, and 14th, Amendments prohibition against Bills of Attainder, Ex Post Facto Punishment, the Separation of Powers Doctrine, Due Process, Equal Protection and the prohibition against cruel and unusual punishment.

(4) The Commission's exercise of Article III authority under 18 U.S.C. § 3583(d)-(i) is a violation of law that deprives D.C. citizens the fundamental right to seek judicial clemency under Rule 35(b) of the Superior Court Rules of Criminal Procedure.

**B.     The Respondents' Motion**

The respondents' seek dismissal of the petition, or judgment as a matter of law, on the following grounds:

(1) the Ex Post Facto Clause does not apply to petitioners' case;

(2) the Revitalization Act is not a Bill of Attainder;

(3) the Commission's authority is not judicial and does not violate the separation of powers doctrine; and

(4) the Commission's revocation of the petitioner's supervised release does not violate the equal protection or due process clause.

**C.     The Petitioner's Response**

In response to the respondents' motion, the petitioner reasserts his argument that the Revitalization Act is a Bill of Attainder. In addition, he argues that the Commission improperly

treats D.C. Code offenders differently than U.S. Code offenders. The petitioner also reasserts his argument that the Revitalization Act violates the separation of powers doctrine and the due process clause.

### III. Standard of Review

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but "must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the

3

speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, adopted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

When a motion to dismiss pursuant to Rule 12(b)(6) is accompanied by affidavits, exhibits and other documents to be considered by the Court, the motion will be construed as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

**B.   Motion for Summary Judgment**

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of

whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. Id. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, at 587 (citation omitted).

### IV. Analysis

**A. The Revitalization Act**

Pursuant to the Revitalization Act, on August 5, 1998, the Commission assumed exclusive jurisdiction over all D.C. Code offenders. See Franklin v. District of Columbia, 163 F.3d 625, 632 (D.C.Cir. 1998). As a D.C. prisoner housed in a federal facility, the petitioner is subject to the provisions of the Revitalization Act.[1]

---

[1] The petitioner was convicted of attempted possession with the intent to distribute cocaine on September 27, 2002, in the D.C. Superior Court. The petitioner received a sentence of three years imprisonment, all but six months suspended, and two years of supervised probation, followed by five years of supervised release. A series of violations has resulted in the petitioner's incarceration in federal prison.

1. Bill of Attainder

"Article I, § 9 of the United States Constitution provides that '[n]o Bill of Attainder or ex post facto Law shall be passed.'" In re DNA Ex Post Facto Issues, 561 F.3d 294 (4th Cir. 2009). A bill of attainder is "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." Nixon v. Administrator of Gen. Servs., 433 U.S. 425, 468 (1977).

In this case, the petitioner asserts that the Revitalization Act is a Bill of Attainder. However, the Revitalization Act affects an entire class of persons, D.C. Code offenders, not an "identifiable individual." See Bledsoe v. United States, 384 F.3d 1232 (10th Cir. 2004). In addition, the Act does not inflict any punishment upon the petitioner "beyond maintaining his original sentence." Webb v. Williamson, 2007 WL 1450397 *3 (M.D.Pa. May 16, 2007). Thus, the Revitalization Act is not a Bill of Attainder.

2. Ex Post Facto Clause

The Ex Post Facto Clause "forbids the Congress and the States to enact any law which imposes a punishment for an act which was not punishable at the time committed; or imposes additional punishment to that then prescribed." Weaver v. Graham, 450 U.S. 24, 28 (1981) (internal quotations omitted). The central concerns of this provision are "the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." Id. at 30. "To fall within the ex post facto prohibition, a law must be retrospective - - that is, it must apply to events occurring before its enactment - - and it must disadvantage the offender affected by it, by altering the definition of criminal conduct or increasing the punishment for the crime." Lynce v. Mathis, 519 U.S. 433, 441 (1997).

In this case, the criminal conduct underlying the petitioner's conviction was committed in 2002. (Dckt. 11) at 4. However, under the Revitalization Act, the Commission assumed jurisdiction over D.C. Code offenders in 1998. Franklin v. District of Columbia, 163 F.3d at 632. Thus, the ex post facto clause is not applicable in this case.

      3.    Separation of Powers Doctrine

Pursuant to D.C. Code § 11-923(b), authority to impose a prison sentence on a D.C. offender rests with the Superior Court of the District of Columbia. The Commission has no authority in this area. Rather, the Commission's authority is limited to granting, denying or revoking a D.C. offender's supervised release. See D.C. Code § 24-133(c)(2). The Commission exercises this authority by virtue of the provisions of the Revitalization Act.

The petitioner argues that the Commission's ability to revoke his parole is a judicial function that violates the separation of powers doctrine. However, this Court has previously found that argument to be without merit. See Tunstall v. Deboo, Civ. Action No. 2:08cv98, 2009 WL 1794687 *5 (N.D.W.Va. June 23, 2009). Relying on Mistretta v. United States, 488 U.S. 361, 390 (1989), the Court noted that "[t]he sentencing function long has been a peculiarly shared responsibility among the Branches of Government and has never been thought of as the exclusive constitutional province of any one branch." Tunstall at *5. Moreover, other Courts have made similar findings. See Leach v. United States Parole Comm'n, 522 F.Supp.2d 250 (D.D.C. 2007) ("As the duly authorizing paroling authority, the Commission does not usurp a judicial function when . . . it acts pursuant to the parole laws and regulations of the District of Columbia. This is so because parole revocation is not the continuation of a criminal trial but a separate administrative proceeding, pertaining to the execution of an imposed sentence.") (internal quotations and citations omitted)).

Accordingly, this argument is foreclosed by the prior precedent of this Court.

    4.   Equal Protection Clause

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall … deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, §1. To be successful on an equal protection claim, the plaintiff must demonstrate "that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F. 3d 648, 654 (4th Cir. 2001). If the plaintiff makes such showing, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." Id.

In this case, the petitioner complains that the Commission treats D.C. Code offenders different than federal code offenders. However, prisoners are not generally considered a "suspect class" for equal protection purposes. See, e.g., Moss v. Clark, 886 F.2d 686, 689 (4th Cir. 1989). Moreover, D.C. Code offenders are not similarly situated to a federal code offender. Each have violated different laws that require different punishments and procedures. Accordingly, the petitioner's equal protection claim must fail.

    5.   Due Process Clause

It appears that the petitioner asserts that the Revitalization Act violates his right to due process because it allows the Commission to revoke his parole. While it is true that a parolee is entitled to some procedural due process rights when his parole is revoked, the due process clause requires only "some orderly process, however informal." Morrissey v. Brewer, 408 U.S. 471, 482 (1972). And, although the Commission has established such processes, the petitioner does not allege any specific violations of those procedures. Accordingly, his due process claim must fail.

**B.   D.C. Sentencing Reform Amendment Act ("SRAA") of 2000**[2]

The petitioner asserts that the SRAA provides no avenue through which a D.C. parolee may challenge a sentence imposed after his probation/supervised release is revoked by the Commission. The petitioner asserts therefore, that the SRAA violates his constitutional rights. Specifically, the petitioner alleges the SRAA is a bill of attainder and that it violates the ex post facto, equal protection and due process clauses. The petitioner further asserts that the SRAA violates the separation of powers doctrine.

However, for the same or similar reasons noted above, the petitioner's claims have no merit. The SRAA affects an entire class of persons, not "identifiable individuals." In addition, the SRAA was effective June 8, 2001,[3] prior to the date on which the petitioner committed his underlying criminal activity. Thus, there is no ex post facto violation. Moreover, the petitioner has failed to show that he is a member of a "suspect class" or that he is being treated differently than others similarly situated. Further, the petitioner fails to allege that any specific violation of the SRAA infringes upon his due process rights. Finally, like the Revitalization Act, the SRAA does not delegate article III authority to the Commission. See D.C. Code § 24-403.01(b)(6). Instead, it merely authorizes the Commission to act on parole matters, in accordance with the appropriate laws and regulations. See Leach v. United States Parole Comm'n, 522 F.Supp.2d at 250. Accordingly, the petitioner's challenges to the SRAA are also without merit.

### V.   Recommendation

---

[2] The Court notes that the respondent failed to address the petitioner's claims related to the SRAA. However, because the undersigned finds that those claims have no merit, no additional response will be required.

[3] See In re W.M., 851 A.2d 431, 443 n. 11 (D.C. 2004).

For the reasons stated in this opinion, the undersigned recommends that the respondents' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Dckt. 10) be **GRANTED** and the petitioner's habeas petition (dckt. 1) be **DENIED** and **DISMISSED with prejudice**.

Within ten (10) days after being served with a copy of this recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket and to counsel of record via electronic means.

DATED: August 27, 2009.

_____
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE